UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RJR (XXX-XX-0909)                     CIVIL ACTION NO. 09-cv-1284

VERSUS                                JUDGE HICKS

US COMMISSIONER SOCIAL          MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

**REPORT AND RECOMMENDATION**

**Introduction**

       Plaintiff was born in 1967, has a high school education, and past work experience as a welder, paper machine operator, and heavy equipment operator. Plaintiff was at work in September 2006 when a large, eight-inch pipe rolled down his left leg, dislocating his knee and degloving the side of his left thigh. Several surgeries have been required to repair the knee and femur, as well as address tendon, artery, and nerve issues that have arisen. Plaintiff's treating specialist diagnosed him in 2008 with an unstable knee and quadriceps deficiency, with surgical repair necessary for both problems. The specialist recommended that, before any knee surgery, the quadriceps be rebuilt using donor muscle to strengthen the muscle. That surgery, as of the time of the Agency decision, was yet to be performed.

       Plaintiff filed an application for disability benefits. ALJ Charles Lindsay held a hearing and issued a decision that denied the claim. The Appeals Council denied a request for review. Plaintiff filed this civil action seeking judicial review pursuant to 42 U.S.C. § 405(g).

**Issues on Appeal**

Plaintiff lists three errors. He complains that (1) the ALJ's step two finding was not technically correct, (2) the ALJ failed to specify the frequency of the sit/stand option he assigned to Plaintiff, and (3) the ALJ did not address a functional capacity evaluation that found Plaintiff needs to stand *and walk* hourly.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

    **A. Introduction**

The Social Security Act entitles certain "disabled" persons to disability benefits or supplemental security income benefits. The Act defines disabled persons as those who are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months. The Commissioner, pursuant to the Act, has promulgated regulations that include what is commonly referred to as the five-step sequential analysis. See 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (parallel regulations governing claims for supplemental security income). The analysis is described in cases such as Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003)and Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). A finding against the claimant at any step ends the analysis and results in denial of the claim.

### B. Step Two Finding

The ALJ found that Plaintiff had not engaged in substantial gainful activity (step one) since his onset date. He then turned to step two, which asks whether the claimant has impairments that are "severe" within the meaning of the regulations. The test is not very demanding. An impairment "can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985). The ALJ found that Plaintiff did have such impairments in the form of knee and foot pain.

Plaintiff argues that pain is a symptom of an impairment, but not itself an impairment. He states that the ALJ "surely intended" to find that the underlying knee and foot medical conditions – not the pain caused by them – were severe impairments. Plaintiff does not

articulate how this alleged technical error[1], even if corrected to Plaintiff's satisfaction on remand, would have any impact on the rest of the sequential analysis or the outcome of the case.

The court should not vacate a decision based on a potential procedural flaw unless the substantial rights of a party have been affected. Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989). See also Palomo v. Barnhart, 154 Fed.Appx. 426, n. 13 (5th Cir. 2005). Plaintiff has not articulated how his substantial rights were affected by the step two decision, so no judicial relief is warranted with respect to this issue.

**C. Sit/Stand Option**

The ALJ assessed the medical records and testimony to determine Plaintiff's residual functional capacity ("RFC"). He found that Plaintiff was limited to performing sedentary work (the least demanding category of work) with the additional limitations that Plaintiff could not climb ladders or scaffolding, could only occasionally climb ramps and stairs, occasionally balance and kneel but not crouch or crawl, and "must have a sit/stand option and be allowed the occasional use of a cane for ambulation." Tr. 18-19.

---

[1] ALJs routinely list back pain, shoulder pain, and the like among the severe impairments. A treatise states that pain may be a severe impairment at step two of the analysis, just as it may be disabling. Bloch on Social Security § 3:11 and § 3:37. See also Social Security Ruling 96-3p, explaining that symptoms such as pain may cause limitations that require a finding of a step two severe impairment even if the objective medical evidence would not itself establish that the impairment is severe.

At step four, the ALJ determines whether the claimant is capable of performing the demands of his past relevant work. Vocational Expert ("VE") Joni Crayton testified at the hearing that Plaintiff, given his RFC and other factors, could not perform his past work. Tr. 40-41. The ALJ accepted that testimony and decided step four in Plaintiff's favor. Tr. 20-21.

The ALJ then turned to step five, which asks whether the claimant's age, education, work experience, and RFC allow him to perform the demands of other jobs that exist in significant numbers. The ALJ asked the VE to assume a person such as Plaintiff with the RFC assessed above (but without the sit/stand option). The VE identified the jobs of telephone information clerk and document preparer that would be available. The ALJ then asked the VE to "assume the person required a sit/stand option." He asked if the person could, with that additional limitation, perform the two identified jobs. The VE said that he could because "the office workers would be allowed a sit/stand option." The VE also testified that the person could perform those jobs and occasionally use a cane. Tr. 41-42. The ALJ accepted that testimony and held at step five that Plaintiff was not disabled. Tr. 21-22.

Plaintiff argues that the ALJ erred because he did not assess the sit/stand option with sufficient specificity. He cites Social Security Ruling 96-9p, which provides that the "RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing."

An ALJ will often describe a sit/stand option to be "as needed." The ALJ did not in this case make such an express statement at the hearing or in the written decision, which would have avoided the need to litigate this issue, but the reasonable implication of the ALJ's description was that the sit/stand option would be at Plaintiff's own volition or as needed. Other courts have reached the same conclusion. See Williams v. Barnhart, 140 Fed. Appx. 932, 937 (11th Cir. 2005) and Young v. Commissioner, 2009 WL 2827945, *12 (W.D. La. 2009). The VE testified that Plaintiff could perform the demands of the two identified jobs even with that most restrictive sit/stand limitation. Accordingly, there is no basis to reverse the Agency decision with respect to this issue.

### D. Need to Stand and Walk

Plaintiff testified at the hearing that he could stand for probably an hour before his right leg, which tends to bear all of his weight, starts to cramp. Plaintiff said he could probably sit about an hour and would then have to get up and "move around because of my leg it gets stiff." He added: "And lots of times my left side of rear and stuff it goes numb like until its like asleep, stir around." Tr. 35. Plaintiff's counsel asked the VE what impact it would have if the sit/stand option were changed to a sit, stand and walk option, where the person had to move around, to relieve a stiff leg or the like, once an hour. The VE testified that leaving the work station once per hour, which would be more than just standing for a break, would exceed what an employer would allow. Tr. 43.

Counsel stated at the hearing that he was considering obtaining a functional capacity evaluation. The ALJ agreed to leave the record open for 30 days to receive that or other evidence. Tr. 38. Plaintiff later filed a report by Steve Allison, Doctor of Physical Therapy. He reviewed Plaintiff's medical history and had Plaintiff perform certain physical tests. Dr. Allison interpreted the available information to suggest that Plaintiff had the RFC to safely perform activity classified in the sedentary to light physical demand level, with recommended restrictions. Table one of the report sets forth a list of functional activities such as sitting, standing, and walking, and offers comments or specific functional limitations in each area. With regard to sitting, Dr. Allison wrote: "On average, he will need to stand and walk for 20-minutes each hour." Tr. 260-75.

Plaintiff was to submit such evidence within 30 days of the hearing on June 3, 2008. Dr. Allison's report is dated June 28, 2008, well within the permitted time, but the information on the copy in the record suggests that Plaintiff's counsel did not fax it to the Agency until July 30, 2008, which was after the deadline. The actual timing and circumstances of the submission cannot be determined with certainty from the record, but it is possible that an untimely submission caused the Allison report to be overlooked during the drafting and preparation of the ALJ's decision. For whatever reason, the decision was never mentioned in the written decision that issued in December 2008. Plaintiff drew this to the attention of the Appeals Council (Tr. 5), but the Council denied a request for review without any specific mention of the Allison report. Tr. 1-2.

The court has encouraged Plaintiff's counsel in the past to submit such reports when the case is before the ALJ rather than waiting for an unfavorable decision and filing the report for the first time with the Appeals Council. The court reasoned that a claimant should file his best evidence at the "trial level" before the ALJ or risk missing out on what is probably the best chance to present evidence to a decisionmaker who will afford that evidence full consideration and a reasoned, written decision. See Henderson v. Commissioner, 2009 WL 2984190 (W.D. La. 2009). Plaintiff did just that but, for whatever reason, the report was not discussed by the ALJ.

The court has noted before that it has reviewed a number of Dr. Allison's reports and observed that Allison very often lists in the summary chart a finding that a claimant will need a break from sitting to stand/walk for 20 minutes each hour. Those breaks, which take a person away from a work station, usually preclude the performance of the unskilled jobs a claimant could otherwise perform. The court has sometimes declined to reverse and remand, despite the Allison report, when a claimant has presented the report only to the Appeals Council and there was no apparent medical basis to impose such a limitation. The court noted in Bell v. Commissioner, 2009 WL 5125418 (W.D. La. 2009) that: "Such a devastating limitation requires a firm and explained foundation in the medical and other evidence, and that foundation is not present in this case."

This case is different. Plaintiff submitted the report to the ALJ, so the absence of specific discussion causes more concern than the lack of discussion by the Appeals Council

(which usually does not explain the reasons for its denials). More important, there is medical evidence and testimony in this case that could plausibly support such a requirement. It is obvious that Plaintiff suffered a terrible leg injury, and the ALJ recognized that Plaintiff would require the ability to sit or stand at will. Thus, it is not as it was in some earlier cases where there was no finding or significant evidence of even a similar limitation.

An ALJ need not discuss every piece of evidence in the record, but he may not ignore a significant line of evidence that is in contradiction to the ALJ's findings and that could reasonably cast doubt on the result. Rey v. Commissioner, 2009 WL 249702, *2 (W.D. La. 2009). The decision must not only state which evidence was considered in support of the result but must also indicate why evidence that would support a claim was rejected. Failure to explain an implicit rejection of evidence may be grounds for reversal and remand. Social Security Law & Practice, § 53:11 (Comprehensive and Analytical Findings). See also Reeder v. Apfel, 214 F.3d 984, 988 (8th Cir. 2000) (failure to specifically address records indicating some limitations in ability to stand, sit, and lift required remand).

It would be inappropriate for the court to weigh Dr. Allison's report, consider the Commissioner's arguments, and decide the weight of the report in the first instance. It is the role of the ALJ to first address the evidence and, if warranted, gather additional evidence or reports to flesh out the issues. The court's proper role is confined to an appellate review of the agency's final decision. For the court to attempt to decide the case, without any prior discussion by the ALJ or Appeals Council about the relative weight or meaning of this

potentially important finding, would not be appropriate. Under these circumstances, the Commissioner's decision must be reversed, and the case remanded to the agency for further proceedings.

On remand, Plaintiff and the agency may further explore the issues addressed herein or any other relevant matters. See 20 C.F.R. § 404.983 (following a federal court remand, "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case."). See also Social Security Law and Practice, § 55:74 (there is ordinarily "no limit on a claimant's supplementing the record on remand" after a sentence four or sentence six remand).

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be reversed pursuant to the fourth sentence of 42 U.S.C. § 405(g) and that this case be remanded for further proceedings consistent with the court's decision.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are

directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 13th day of July, 2010.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE